This time we'll hear Washington v. Whitaker. Michael Hiller of Hiller, P.C. We represent the plaintiff appellants in this challenge to the constitutionality of the designation of cannabis under the Controlled Substances Act. Today, more than 2.1 million Americans are currently registered medical cannabis patients in 33 state legal jurisdictions across the country and require regular administrations of medical cannabis to keep themselves alive. Two of those patients are... I think there's a disconnect between saying that 2.1 million people use cannabis for medical purposes and that they are required to use it to stay alive. Let me rephrase that. That's not right, is it? Let me rephrase that, Your Honor. You're correct. I'm sure there are patients who don't require it to keep themselves alive, but our clients do. And Judge Hellerstein-Below even recognized that no one could legitimately claim that our clients aren't alive today because of the effects of medical cannabis. And therein lies the problem, because this is the only medication that keeps these people alive. And under the Due Process Clause of the Fifth Amendment, a person has a right to preserve their health and their life. And I cite to our brief, in particular, England v. Louisiana State Board of Examiners, in which the court recognized that people have a fundamental right to use reasonable medicine and reasonable medical procedures in order to keep themselves alive. And in that case, they distinguished between chiropractics, which was at issue there, and things like voodoo and bee sting therapy and colts. And clearly we don't have that situation here. Here we have 33 state legal medical jurisdictions, as well as the District of Columbia, Puerto Rico, and Guam, in which medical cannabis is legal for use. The United States government currently owns a federal medical cannabis patent, as well as an international patent, and has attested to the fact that medical cannabis is effective in the treatment of Parkinson's disease, Alzheimer's disease, HIV-induced dementia, and autoimmune diseases. So this is not a situation where we're talking about an unknown medical therapy. This is a therapy that is shown to work. And in the case of Alexis Bortel, whose parents are here today, she was having multiple seizures or pre-seizure onsets every day for 14 months. She started with medical cannabis, and she hasn't had a seizure or a pre-seizure onset in four years. So we are talking about a medicine that works. And unfortunately, people are placed in the position where if they take their medication, they're committing a federal crime every day, even though this is the only way they can keep themselves alive. In addition, Your Honors, I would emphasize that the lower court erred in ruling that the designation of cannabis under the Controlled Substances Act is rationally related and complies with the rigors of due process. We have a situation- Has there been an effort to get the FDA to approve cannabis as a treatment for this or that disease? It's interesting that you mention that, Your Honor, because on June 28th of this year, the FDA, for the first time, recognized a cannabis drug called Epidiolex for the treatment of epileptic seizures in children. That does not help your clients. It does not help my clients, unfortunately. What is the effect of that approval? Is it one part of the government says it's effective and can be used, and the other part says we'll put you in jail if you do? And that is the problem. That is the effect. And under the Controlled Substances Act, there are three requirements that must be met, one of which is they have to show that there is no accepted medical use in treatment in the United States. And on the one hand, as Your Honor just pointed out, Epidiolex has just been recognized as an effective form of medical treatment for seizures in some children. So cannabis clearly does work, and there are 33 state legal jurisdictions. My understanding is that if the FDA approves a drug for one purpose, doctors are free to use that drug for other purposes as well. But at the moment, the only approved drug for that purpose is Epidiolex, so they can prescribe that drug, but the other drugs are simply not available to medical patients, and therein lies the problem. And if they're as effective as you argue and allege, and if it's as obvious as all that, then why not approach the FDA? Well, there have been... And there are a lot of people complaining that the FDA is just too slow in approving drugs that are essential for people's ability to live and function. If you pursue an administrative review process, the Controlled Substances Act does provide a separate administrative review, but that administrative review, on average, takes nine years to complete. And in addition to that, there have been six applications to reschedule cannabis since 2003. In 2003, the Department of Health and Human Services obtained a medical patent for medical cannabis for the treatment of the diseases I mentioned earlier. And so on the one hand, and the Department of Health and Human Services gives the binding recommendation to the DEA and the Justice Department on issues relating to rescheduling and descheduling drugs for purposes of the Controlled Substances Act. So on the one hand, in effect, the deciding vote has acknowledged that there is medical utility for cannabis, and on the other hand, that same binding vote has apparently told the DEA and the Justice Department that there is no medical use for cannabis in the United States. And that dichotomy suggests pure irrationality, Your Honor. And in addition to that, I would also point out- Surely there are recognized downsides to approving cannabis for general use, correct? When you say general use, you mean medical use, or do you mean adult- Entertainment, recreation. The last time there was a trial, in fact, the only time there was a trial, was an administrative trial before Judge Francis Young. And at the conclusion of that trial, he said that cannabis was one of the safest therapeutic drugs known to man, and there was no toxicity, and that there were no side effects. And in effect, I would say to this Court, what we're asking for is effectively what was given back in 1988 when Judge Young considered this issue. We are not here before this Court today asking that this Court declare that the designation of cannabis is unconstitutional. We are here to ask for the opportunity to prove it. Assuming all the facts of the complaint are true, we do set forth claims, legitimate claims, that the designation of cannabis is unconstitutional and deprives people of their right to preserve their health and their lives. Thank you very much. But if there is an administrative review, is it the appropriate thing to ask a Court to expedite that review and have that body decide if things have changed enough so that what was rational at one point, as you say, is not today? Is the administrative review as a matter of discretion and perhaps sped by Courts the appropriate way? I'm sorry, I had a little trouble. I think the idea is, is your remedy to seek expedited review, so just not nine years on the basis that what was rational in the past may no longer be rational now. Yes, and the answer to that, that's a question that derives directly from Judge Hellerstein's opinion. He did indicate that the parties could bring a writ of mandamus proceeding to expedite review. The problem is that under current federal law, in order to obtain expedited review and bring a writ of mandamus, you must first, as a predicate to bringing that action, you must first show that there has been egregious delay. And the Courts so far have said that egregious delay is between six and eight years. Our clients can't wait six to eight years. And so the writ of mandamus proceeding is simply not available as a remedy to our clients. If they want to seek administrative review, they will be required to wait years. Who is it who says that six to eight years is the standard? Oh, I can cite the case. The cases are NRDC. What courts? Oh, that was the Ninth Circuit in NRDC, Inc., versus United States EPA. And in addition, City of Virginia Beach, which is also a circuit court-level case. What court? I would imagine that the City of Virginia Beach case is a Fourth Circuit case, although— Well, I think Judge Calabresi's question, if I may presume to interpret it, is you're in the Second Circuit. So you're making that argument, and I'm not sure we're bound by the Ninth Circuit or the Fourth Circuit. Well, so far as we were able to discern in the cases that have spoken to this particular issue concerning administrative review, I'm not certain that this Court has actually rendered a particular decision on this issue. That's why we turned the lights on. Well, you've reserved a minute to rebuttal. Thank you. Good morning. Good morning, Your Honors, and may it please the Court. Samuel Dollinger for the government from the United States Attorney's Office. The plaintiff's principal claim here is that new scientific evidence or other developments in facts caused the placement of marijuana on Schedule I of the CSA to no longer be constitutionally rational. Judge Hellerstein correctly concluded that the proper way to present these types of arguments is through the available administrative procedure. When you say it's new, I mean, the basic science regarding the usefulness of cannabis for medical purposes has been documented for decades. What's new about it? The government is turning a blind eye to that and not applying the standards for reclassification. Judge Rakoff, respectfully, in using the term new evidence, I am simply repeating the term that is used by the plaintiffs to explain why their claims are different from all of those that have been rejected in the past. I agree that. They're hoisting a little bit on a dilemma. On the one hand, they say that exhaustion is a futility, and on the other hand, they say they got some new stuff. Precisely, Your Honor. But if matters of which we could take probably judicial notice because they're so old and so common and so well documented show that the medical use of marijuana is fully proven, then that's not new. And so why should we spend nine years waiting to find out what should be obvious? Well, Judge Rakoff, if you look at the decisions, for instance, of the D.C. Circuit in Americans for Safe Access in 2013, the D.C. Circuit did consider a full administrative record compiled by the DEA in denying a previous petition to reschedule marijuana and concluded in that decision that as of 2013, there were not sufficient studies of sufficient quality showing both the safety and effectiveness of marijuana. And for that reason found- Is that the right standard? Doesn't it also have to be shown that it doesn't have any medical use? Your Honor, that is part of the standard that the DEA uses to determine whether there is a currently accepted medical use, and that's a five-part standard that the D.C. Circuit had previously approved. So if the D.C. Circuit had the basic information or the administrative agency had the basic information and the D.C. Circuit said that's fine, then there is no point in their going back to the administrative agency. Well, Judge Rakoff, I think that gets back to your previous point, which is that the plaintiffs here say that they have new information that was not previously considered by courts or by the administrative agency. The policy rationales for exhaustion apply in full force here, where you have a decision that does rely on technical and scientific matters where there is agency expertise. Additionally, this Court has recognized that exhaustion will conserve judicial resources where it may moot the controversy, it may permit decision on a non-constitutional ground. And beyond that, to return, I think, to a question of Judge Jacobs earlier, in terms of the passage of time that is necessary, the DEA has fully considered a rescheduling petition and denied it as recently as 2016. Counsel, would you agree, using the words of the German, Italian, and Austrian constitutional courts, that this is a rule that is heading towards unconstitutionality, and that a court can say, as these learned constitutional courts have, that review by an administrative agency is something that should happen, or in due course, a court may well have to step in? The concept we have not applied so far here is a concept that is proven very, very useful in other constitutional systems. I'm sorry, Judge Calabresi, I don't think that I have fully grasped your question. Is your question whether a constitutional question can be decided by an administrative agency? No, my question is whether a court can say to a legislature, or in this case, to an administrative agency, that this rule is becoming problematical constitutionally, because there are inconsistencies that are serious, and that therefore it behooves the agency, rather than the court, to take a good look at it soon. That's what has happened in many other constitutional systems. We have not done it. I can think, I won't bother you now, with some situations, dramatic ones, where we would have done far better had we been able to. Your Honor, again, if I understand, your question is whether this court can direct the agency to consider another outcome in its administrative review process, and I would suggest that the appropriate way for this court to do so would be on a petition for review under 21 U.S.C. 877, which is the provision of the CSA that does provide for a court of appeals review of an agency decision, again, on that full administrative record compiled by the agency on a petition. Moving on, if I may, even if the court were to look past the exhaustion point, Judge Hellerstein correctly held in the alternative that the rationality question has already been decided by this court in United States v. Kiffer. Kiffer was cited with approval in 2013, and specifically its rationality holding by this court in U.S. v. Kanori. So, again, even were the court to consider constitutional rationality on the merits, it should nonetheless affirm. And last, on the substantive due process point, in terms of whether there's a fundamental right to treat one's disease using any remedy that a person desires, that question has also been considered by a number of courts, specifically in the marijuana context by the Ninth Circuit, which rejected it in Raich v. Gonzalez in 2007, and beyond that in other contexts as well, including the en banc D.C. Circuit, which considered a similar right to preserve life through experimental drugs for terminally ill patients in Abigail Alliance, which we cited at page, I believe, 31 of the government's brief. So unless there are further questions, we will rest on our brief for the remaining claims. Thank you. Thank you. Mr. Heller. Referencing Kiffer and Kanori, I would point out that this is the first as-applied challenge by a medical cannabis patient in the Second Circuit, so the issues we've raised have not been decided by this court. And I do want to address the issue of futility. There's a case entitled Monson v. Drug Enforcement Administration, which involved the situation in which the DEA, the plaintiffs were challenging a rule governing the classification of hemp under the Controlled Substances Act. In that case, the DEA had rendered a determination several months before, and the court ruled that since the DEA has not advised the court that it will change its position on the treatment of industrial hemp under the CSA, Monson and Hage should not be required to pursue a futile course of action. Here, three months before and 11 months before, the applications to resketchable cannabis were rejected. Your adversary was saying that you were claiming you had new information that was different from what had been presented before. And if that's true, then why shouldn't the agency be given the opportunity to comment on it? In each instance we referred to new evidence and information. We were referring to what the courts had reviewed, because in each of those cases opposing counsel has cited in his briefs, in each instance they did not rely on any or most of the evidence that we cited. We were talking about what the courts had seen.  And as Your Honor pointed out, the availability of evidence concerning the medical efficacy of cannabis has been around for decades. And the fact of the matter is, despite or in the face of that evidence, the courts have simply not, well, certainly the agencies have not reacted. And the problem for patients who need cannabis to live is such that they need to get access to their medication and not be living under the threat that at any point in time the federal government could reverse its hands-off policy towards cannabis and begin enforcing the Controlled Substances Act again, cutting off their lines of distribution of the medications they need. Does what is egregious delay depend on the regulation being challenged? You cited Ninth and Fourth Circuit situations in which delays of eight years or so were not deemed egregious. They dealt with very different things. Here you are saying life is at stake. I don't know if that is so. But if that is so, might the court view a delay that was less than that to be egregious? I appreciate the question. The answer would be that any delay, for example, for Jagger Codd, who suffers from Lee's disease, any delay at all, a day, a week, that in and of itself would be egregious. And there's just simply no way we could reasonably expect that a writ of mandamus proceeding, followed by full administrative review, could be completed within the time necessary in order to give Jagger Codd and Alexis Bortel and the others who need cannabis to live the opportunity to win those cases and then get their medications before they become ill. Thank you. Thank you. Thank you both. We'll reserve decision.